**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 98-71-3 (BAH) |
| ERIC GORDON, | Chief Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

In 1998, the defendant, Eric Gordon, who is proceeding *pro se*, was convicted, upon pleading guilty, of Conspiracy to Participate in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. § 1962(d), which charge was predicated upon four Racketeering Acts: (1) conspiracy to distribute marijuana, cocaine base, and cocaine; (2) conspiracy to distribute marijuana; (3) assault with intent to murder, and (4) double homicide. Def.'s Pro Se Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) ("Def's Mot."), Ex. 2 ("Presentence Investigation Report (PSR)") at 1, 4–5, ECF No. 445-2; Plea Agreement, ECF No. 95.[1] The defendant was sentenced, in accordance with the plea agreement, pursuant to the Federal Rule of Criminal Procedure 11(e)(1)(C), recodified at 11(c)(1)(C), to an agreed-upon term of 287 months of incarceration. Def.'s Mot., Ex. 1 ("Judgment") at 3, ECF No. 445-1. Pending before the Court is the defendant's motion, pursuant to 18 U.S.C. § 3582(c)(2), Def.'s Mot. at 1, ECF No. 445,[2] for a reduction in his sentence due to Amendment 782 to the U.S. Sentencing Commission Guidelines, which amendment, in 2014, reduced by two levels the base

---

[1] Due to the age of this case, some of the documents cited here, the plea agreement, ECF No. 95, and the sentencing hearing transcript, ECF No. 314, are not available electronically on the docket, but are held in paper form only in the Clerk's office.

[2] The defendant filed the pending motion on December 3, 2014, *see* Def.'s Mot., and 18 months later, this case was re-assigned, on June 20, 2016, to the undersigned Chief Judge.

1

offense levels assigned to drug offenses, based upon the quantity of drugs, in the Drug Quantity Table, in U.S.S.G. §2D1.1 and §2D1.11.  Sentencing Guidelines for United States Courts, 79 Fed. Reg. 25,996, 26,001–04 (May 6, 2014); Sentencing Guidelines for the United States Courts, 79 Fed. Reg. 44973 (Aug. 1, 2014) (making Amendment 782 retroactive); *see also United States v. Butler*, 130 F. Supp. 3d 317, 319 (D.D.C. 2015); U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") §§ 1B1.10(d), (e) (U.S. SENTENCING COMM'N 2016).  For the reasons discussed below, the defendant's motion is denied.

## I.    LEGAL STANDARD

Courts may modify the sentence of a defendant who "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," so long as "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2); *see also Dillon v. United States*, 560 U.S. 817, 826 (2010).  The Sentencing Commission, in turn, issued the policy statement in U.S.S.G. § 1B1.10, providing that defendants, who are serving terms of imprisonment based on guideline ranges that were subsequently lowered as a result of certain enumerated amendments to the Guidelines Manual, may receive new sentences consistent with the guideline range supplied under the relevant amendment.  U.S.S.G. § 1B1.10(a).

The Supreme Court has articulated a two-step approach for determining whether a defendant's sentence may be reduced under § 3582(c)(2) and U.S.S.G. § 1B1.10.  *Dillon*, 560 U.S. at 826–27.  First, the court must "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized."  *Id.* at 827.  To do so, the court calculates the amended guideline range that would have applied to the defendant had the relevant amendment been in effect at the time of the initial sentencing, leaving all other guideline

application decisions unaffected, and then evaluates whether the amendment would have the effect of lowering the defendant's guideline range. U.S.S.G. § 1B1.10(a). Second, if the amendment does apply to the defendant and has the effect of reducing the defendant's guideline range, the court determines whether or not a reduction is warranted in light of any applicable 18 U.S.C. § 3553(a) factors. *Id.* At the second stage, courts maintain discretion to reduce an eligible defendant's sentence under § 3582(c)(2), *see United States v. Lafayette*, 585 F.3d 435, 439 (D.C. Cir. 2009), but this discretion is subject to certain limitations, *see* U.S.S.G. § 1B1.10(b). Most notably, unless the defendant received a below-guidelines sentence pursuant to a government motion reflecting the defendant's substantial assistance to authorities, U.S.S.G. § 1B1.10 precludes any new sentence "to a term [of imprisonment] that is less than the minimum of the amended guideline range" applicable to the defendant. *Id.* § 1B1.10(b)(2).

## II. DISCUSSION

Here, the defendant fails to pass the first step of the *Dillon* test, requiring the court to "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. The defendant's sentence of 276 months was imposed pursuant to a binding plea agreement with the government, under Fed. R. Crim. P. 11(e)(1)(C), and was not a sentence "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2).

The Supreme Court considered whether a defendant who was sentenced pursuant to a binding plea agreement may seek relief under § 3582(c)(2) in *Freeman v. United States*, 564 U.S. 522 (2011). This plurality decision resulted in three separate opinions. In the plurality opinion, four Justices held that "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be

based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief." *Freeman*, 564 U.S. at 534 ( J. Kennedy) (plurality opinion). Justice Sotomayor concurred in the judgment of the plurality opinion, but with different reasoning. According to Justice Sotomayor, while "the term of imprisonment imposed by a district court pursuant to an agreement authorized by Fed. R. Civ. P. 11(c)(1)(C) [] is 'based on' the agreement itself, not on the judge's calculation of the Sentencing Guidelines," sentences based on 11(c)(1)(C) agreements that "expressly use[] a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment" may be modified under § 3582(c)(2) if that sentencing range was subsequently lowered by the United States Sentencing Commission. *Id.* at 534 (J. Sotomayor, concurring). Writing in dissent, four other justices found that a "sentence imposed under a Rule 11(c)(1)(C) plea agreement is based on the agreement, not the Sentencing Guidelines," and, therefore, such sentences are not subject to modification under § 3582(c)(2). *Id.* at 544 (J. Roberts, dissenting).

In analyzing the splintered *Freeman* opinions, the D.C. Circuit held that because "the plurality and concurring opinions do not share common reasoning whereby one analysis is a 'logical subset' of the other," no opinion controls and the Circuit is "bound only by the result in *Freeman*, namely that § 3582(c)(2) relief is not invariably barred when a sentence was imposed pursuant to a Rule 11(c)(1)(C) plea agreement." *Epps v. United States*, 707 F.3d 337, 350–51 (D.C. Cir. 2013) (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991)). In reviewing the question *de novo*, the D.C. Circuit found persuasive the plurality's reasoning in *Freeman* and held that whether the defendant would be eligible for a § 3582(c)(2) reduction to a sentence imposed based on an 11(c)(1)(C) plea agreement depends on "the reasons given by the district court for accepting the sentence that it ultimately imposed." *Id.* at 351. In *Epps*, for instance, the

Circuit court identified language in both the plea agreement and the district court's evaluation of the plea agreement that showed reliance on the Sentencing Guidelines.  *Id.* at 352.  Specifically, *Epps* cited to three places in the record where the Guidelines were explicitly highlighted.  First, the plea agreement expressly stated that the sentence would be "imposed in accordance with" the Guidelines; second, the parties agreed to, and the court granted, a downward departure "applying the Guidelines . . . pursuant to Epps' acceptance of responsibility," which brought the stipulated sentence to within the lowered sentencing range; third, the district court stated during the sentencing that Epps' stipulated sentence was "sufficient . . . *in view of the fact that the crack cocaine guidelines are what they are*."  *Id.* at 352 (citations omitted) (emphasis in original).  Taken together, these three references "anchored the inference that Epps' sentence . . . was determined 'based on' a specific Guidelines range."  *Id.*

Subsequent applications of *Epps* demonstrate that criminal defendants who were sentenced pursuant to Fed. R. Crim. P. 11(c)(1)(c) agreements are entitled to § 3582(c)(2) sentencing reductions "to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement."  *Freeman*, 564 U.S. at 530; *see United States v. Duvall*, No. 09-236-1, 2016 WL 3951054, at *5 (D.C. Cir. July 20, 2016) (quoting *Freeman*, 564 U.S. at 530).  Thus, in *United States v. Aguilar-Vargas*, No. 09-0058-4, 2016 WL 3951053, at *4 (D.D.C. July 20, 2016), the court denied a motion for a reduced sentence because "the sentencing transcript suggest[ed] the government and Aguilar-Vargas did not consider the . . . guideline range in any way whatsoever."  Likewise, in *United States v. Santana-Villanueva*, 144 F. Supp. 3d 149, 151 (D.D.C. 2015), *appeal dismissed*, No. 15-3083, 2016 WL 3040672 (D.C. Cir. May 12, 2016), the court denied relief under § 3582(c)(2) because "the plea agreement . . . invoke[d] the Sentencing Guidelines only to draw a

contrast between what the parties agreed to and the sentence that would be imposed if the Court were to discard that agreement." Similarly, in *United States v. Barajas*, No. CR 11-148 (ESH), 2016 WL 1328095, at *3 (D.D.C. Apr. 5, 2016), the court denied the defendant's motion for modification of sentence because "[t]he [sentencing] Judge repeatedly dismissed the Guidelines as immaterial to the plea's terms, but mentioned them only to compare the proposed sentence with a scenario in which the Court rejected the Agreement."

Under the binding precedent of *Epps*, the Court finds that the defendant's 276-month sentence on his conviction of Conspiracy to Participate in a Racketeer Influenced Corrupt Organization, was not based on the sentencing guidelines and, consequently, he is ineligible for a reduction of sentence under § 3582(c)(2). In contrast to the facts and circumstances in *Epps*, here, the record demonstrates that at no point, in the plea agreement, the judgment order, the statement of reasons, or during the sentencing, did the sentencing judge consider the Guidelines in accepting the defendant's plea agreement and imposing the stipulated sentence. Indeed, the sentencing judge did not calculate the sentencing guidelines nor state what the appropriate sentencing range would have been. In imposing the stipulated sentence, the sentencing judge stated merely that he was doing so "[p]ursuant to the Sentencing Reform Act of 1984, and Federal Rule of Criminal Procedure Rule 11(e)(1)(c)." Sentencing Hr'g Tr., dated Dec. 17, 1998 at 4, ECF No. 314. In the statement of reasons for the sentence, the sentencing judge wrote simply "sentence imposed pursuant to Fed. R. Crim. P. 11(e)(1)(C) [the predecessor to R. 11(c)(1)(C)]." Def.'s Mot., Ex. 3 ("Statement of Reasons") at 1, ECF No. 445-3.

Even if the sentencing judge implicitly considered the sentencing guidelines when imposing the stipulated sentence, the Court must still conclude that the defendant was not sentenced based on any Guideline affected by Amendment 782. *See* U.S. SENTENCING

GUIDELINES MANUAL (" 1998 U.S.S.G.") § 6B1.2 (U.S. SENTENCING COMM'N 1998) (expressing policy that court should accept stipulated sentence, under Rule 11(c)(1)(C), only when satisfied "either that: (1) the agreed sentence is within the applicable guideline range; or (2) the agreed sentence departs from the applicable guideline range for justifiable reasons"). While two of the four racketeering acts to which the defendant pled guilty involved the distribution of marijuana and the distribution of marijuana and cocaine, to which this amendment would apply, the other two racketeering acts were for assault with intent to kill and first degree murder of two individuals. *See* PSR at 4–5.

According to the 1998 Federal Sentencing Guidelines Manual, effective at the time of the sentencing, the sentencing range for a defendant who has committed multiple racketeering acts is determined by "treat[ing] each underlying offense as if contained in a separate count of conviction." 1998 U.S.S.G. § 2E1.1 cmt. n. 1. Here, the four underlying racketeering acts are actually treated as five different convictions, because each homicide had a separate victim. The Guidelines Manual instructs that the Court must (1) "group together into a single Group" "[a]ll counts involving substantially the same harm," 1998 USSG § 3D1.2; (2) "[d]etermine the offense level applicable to each [] Group[]," *id.* § 3D1.3; and (3) determine the "combined offense level . . . by taking the offense level applicable to the Group with the highest offense level and increa[e] that offense level" by an amount corresponding with the number and seriousness of the other offenses, *id.* §3D1.4.

In this case, the most serious racketeering act with the highest base offense level, was not the racketeering acts involving drugs, but the two first degree murders, each of which has a base offense level of 43. By comparison, the other three racketeering acts of conspiracy to distribute marijuana, conspiracy to distribute marijuana and cocaine, and assault with intent to kill, have

base offense levels of only 32.  *See* PSR at 8.  Under § 3D1.4(c) "any Group that is 9 or more levels less serious than the Group with the highest offense level" shall be "disregard[ed]," and "will not increase the applicable offense level."  Consequently, the drug racketeering acts, which carry a base offense level that is eleven points lower than the first degree murder offenses, would be "disregarded" and would not affect the defendant's total offense level.  In other words, even if the Sentencing Guidelines had been calculated and considered, which they were not, the defendant's applicable sentencing range would be governed by the offense levels associated with the two first degree murders, which guidelines are unaffected by Amendment 782.

Accordingly, it is hereby

**ORDERED** that the defendant's Pro Se Mot. for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2), ECF No. 445, is DENIED.

**SO ORDERED.**

Date: July 29, 2016

_____
BERYL A. HOWELL
Chief Judge